KLEIN, Judge.
Appellant was stopped by an officer after he had behaved suspiciously in a bank and had slowly circled the bank in his vehicle. That stop led to evidence, including an incriminating statement made by appellant, which resulted in his conviction for a previously committed armed robbery in a store. He appeals the denial of his motion to suppress, arguing that the officer did not have reasonable suspicion to stop him. We affirm.
The officer, who was the only witness to testify at the suppression hearing, had been told by dispatch that a bank teller had called because a man had suspiciously walked very slowly through the bank looking around, had then asked a teller for fifty one dollar bills as change for a fifty dollar bill, and then looked around some more as he slowly exited. The bank teller had also informed dispatch that the suspicious man, after leaving the bank, got into a vehicle in which there was another man, and that the vehicle was circling the building. Earlier that day, at roll call, the officer had been informed that bank robberies had occurred in his patrol area and in nearby jurisdictions.
When the officer arrived within three minutes of receiving the call, he observed the vehicle driving slowly toward the front of the bank as if it was circling, but when the driver saw him the vehicle exited the parking lot. The officer followed so as to get the license number and call it in, when the vehicle turned into a dead-end road and stopped. The officer then parked his vehicle behind the suspicious vehicle and turned on his blue lights, thus effecting a stop. After the stop he received the response to his call about the license, which was that the vehicle was wanted in connection with a felony.
We conclude that the circling activity of appellant’s vehicle, combined with the information given by the bank teller and the officer’s knowledge that there had recently been bank robberies in the area, was sufficient to justify the stop. See, State v. Lawson, 446 So.2d 202 (Fla. 3d DCA 1984)(stop justified where car circled block and passed open gas station four or five times at a speed of ten to fifteen miles per hour, at a late hour, in area which had been scene of burglaries and other criminal activity); State v. Tamer, 449 So.2d 890 (Fla. 3d DCA 1984)(stop justified where, at 1:00 a.m., car drove first very slowly at the rear of an office building and then very quickly, in an apparent attempt to evade the officer, who had been informed that day of several arsons in *546 the area); In Interest of G.T., 387 So.2d 485 (Fla. 4th DCA 1980)(stop justified where policemen were called to flower shop by an apprehensive employee to investigate two teenagers who had been hanging around for up to ten minutes for no apparent reason).
The facts are stronger for the state in the present case than they were in Lawson, where the stop was justified, because in the present case, in addition to circling slowly in a car, the defendant had previously been inside the bank looking around. The facts are also stronger for the state than the facts in In Interest of G.T., because in that case the suspects were looking at flowers in a flower shop, while in the present case, the defendant was looking around a bank which, unlike a shop, does not contain merchandise to look at.
Although each of the factors would not necessarily have constituted reasonable suspicion separately, taken together they did constitute reasonable suspicion of criminal activity. State v. Kehoe, 498 So.2d 560, 564 (Fla. 4th DCA 1986)(otherwise innocent factors, considered in combination, may give rise to a reasonable suspicion that justifies a stop).
Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), also supports our conclusion that there was well-founded suspicion in this ease. In Terry an officer observed three men on foot walking back and forth in front of a particular store, in the afternoon, peering in the window of the store, and then conversing with each other. The officer, relying on his experience, concluded that the men were casing the store in order to rob it. The Supreme Court upheld the officer’s stop and pat-down of the men based on essentially no more than the walking back and forth, the peering into the store window, and the conversing.
We are, of course, required by Article I, section 12 of the Florida Constitution to apply United States Supreme Court search and seizure law. In United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989), the Court explained that the requisite “level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence.” As Professor LaFave puts it, “it will suffice that there exists at the time of the stop a substantial possibility that criminal conduct has occurred, is occurring, or is about to occur.” Wayne R. LaFave, Search and Seizure—A Treatise on the Fourth Amendment, § 9.4(b), at 146 (3d ed.1996).
The anonymous tip eases cited by appellant, such as Robinson v. State, 556 So.2d 450 (Fla. 1st DCA 1990), are distinguishable, because in the present case, the tipster was not anonymous. Aguilar v. State, 700 So.2d 58, 59 (Fla. 4th DCA 1997)(tipsters whose identities are readily discoverable are at the “high end of the reliability scale” requiring less independent corroboration). See also, State v. Evans, 692 So.2d 216, 219 (Fla. 4th DCA 1997)(fast food employee’s telling police she thought driver was intoxicated was sufficient to support stop, because tip of citizen-informant, who is “motivated not by pecuniary gain, but by the desire to further justice,” is at the high end of the tip-reliability scale).
Affirmed.
WARNER and TAYLOR, JJ., concur.